JAMES C. PERKINS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; PAULETTE PERKINS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Perkins v. Commissioner
Docket Nos. 135-78, 136-78.
United States Tax Court
T.C. Memo 1979-277; 1979 Tax Ct. Memo LEXIS 248; 38 T.C.M. (CCH) 1087; T.C.M. (RIA) 79277; July 24, 1979, Filed James C. Perkins and Paulette Perkins, pro se. Roy L. Allison, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined deficiencies in and additions to petitioners' income taxes as follows: Addition to the Tax
Year
Deficiency
(I.R.C. § 6653 (a)) [1]
1974
$4,019.96
$201.00
1975
3,736.45
186.82
The cases have been consolidated for trial, briefing and opinion. Petitioner Paulette Perkins' arguments as to the issues of fraud and *249 deception and the constitutional issues were resolved in favor of respondent by partial summary adjudication. Similarly, petitioner James Perkins' constitutional arguments were resolved by partial summary judgment for respondent. After concessions by petitioners, the only issue remaining for our consideration is whether petitioners are entitled to deductions for automobile business mileage in 1974 and 1975 in excess of the 35,000 miles allowed by respondent in each year. FINDINGS OF FACT Petitioners, James C. Perkins and Paulette Perkins, husband and wife, filed joint Federal income tax returns for the taxable years 1974 and 1975 at the Internal Revenue Service Center in Chamblee, Georgia. Petitioners' residence at the time they filed their petitions herein was in Forsyth, Georgia. Petitioner Paulette Perkins (hereafter Paulette) was a housewife, but was not otherwise employed during the period 1974 and 1975. Petitioner James C. Perkins (hereafter James) was employed as a commissioned salesman during 1974 and 1975 for Lawson Products, Inc., a supplier of parts for industrial equipment. James' workday would begin between 6:00 a.m. and 6:30 a.m.; he often would not return *250 home until 11:00 p.m. James worked 5-1/2 days per week. James was, by the nature of his employment, required to drive his personal automobile on sales and service calls within the State of Georgia during the years in question. James did not keep a daily mileage record. Occasionally, it was necessary for James to spend nights at a motel while he was on the road; at times, this occurred once or twice a week. The Perkinses owned at least two cars during the time in question. In 1974 Paulette drove a Corvair. After that car blew up in 1974, she drove a 1969 Pontiac Grand Prix. During 1974, James drove the Grand Prix on business until the Corvair blew up. He then bought a 1974 Dodge and drove that car. In May 1975, James bought a 1975 Ford pick-up truck. The Grand Prix and the Ford pick-up used premium gasoline. The Dodge used regular. James did most of the repair work on his automobiles. Cancelled checks show that the Perkinses paid to gasoline companies the following amounts: Company
1974
1975
Amoco Oil Co. $ 10.76 $ 875.96
Houses Gulf
00
45.00
Petrofina Co.
239.82
591.28
Phillips 66
1,465.84
216.21
Riverside Service
Center (Riverside
Exxon)
69.41
8.63
SearsTexaco
40.60
00
Shell Oil Co.
161.42
1,105.97
Tenneco Oil Co.
497.82
170.82
$2,485.67
$3,013.87 [2]
*251 These payments were made primarily for purchase of gasoline. On their returns for 1974 and 1975, petitioners claimed automobile business mileage of 117,045 and 97,831 miles, respectively. Petitioners' mileage calculations are as follows: 1974
1975
Total credit purchases
$2,485.67
$2,998.80 [4]
Total cash purchases
420.00
540.00
Price per gallon
.35
.45
Total gallons
8,303
7,845
Miles per gallon
17
14
Total miles
141,151
109,830
Total pleasure miles
12,940
11,999
Total business miles
117,045 [3]
97,831
*252 Petitioners used the optional method (standard mileage rate) for computing their automobile business deduction, contained in Rev. Proc. 74-23, 1974-2 C.B. 476. Respondent allowed petitioners 35,000 automobile business miles in each of the years 1974 and 1975, and disallowed the remainder of the claimed miles. OPINION The question presented by this case is whether petitioners have deductible automobile business mileage for 1974 and 1975 in excess of that allowed by respondent. Section 162 allows as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Section 1.162-17(d), Income Tax Regulations, requires the taxpayer to keep adequate records to substantiate transportation and other expenses incurred in carrying on a trade or business. The burden is on the taxpayer to show that the expenses, in fact, have been incurred. [5] Where the records of proof of expenses, however, are incomplete, [6] a reasonable approximation of local transportation can be made based on reliable secondary sources of information and collateral evidence. Sec. 1.162-17(d)(3), Income Tax Regs; Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). *253 Section 274 provides that where travel expenses are incurred not in local travel, but in overnight trips away from home, the taxpayer must keep detailed records substantiating the elements of amount, time, place and business purpose of the expenses. Section 1.274-5(e), Income Tax Regs. Where the taxpayer fails to keep these records for travel away from home, the deduction for the expenses will not be allowed. Petitioners claim that $2,905.67 and $3,529.80 *254 [7] were spent in 1974 and 1975, respectively, on gasoline purchases. Petitioners' calculations show that these expenses establish that James traveled 117,045 and 97,831 business miles for 1974 and 1975, respectively. We find these estimates of business mileage to be excessive. Petitioners' calculations are based to some extent on unsupported expenses and erroneous factors. We will examine each of these in turn. Petitioners include in their total gas purchase figure amounts which are attributable to cash purchases. Petitioners introduced no evidence besides their testimony to substantiate these payments. Such testimony was not sufficiently specific to prove that any cash purchases were made, or to provide a basis for estimating such amount. Petitioners have, therefore, failed to meet the burden of proof substantiating the cash purchases. Calculations including these amounts must be disregarded since we can, at best, base our estimates only on the amounts substantiated *255 by the cancelled checks.[8]
Petitioners estimate their gas mileage based on prices of $.35 and $.45 per gallon of gasoline for 1974 and 1975. We take judicial notice of the fact that the Arab oil embargo of 1973 had a major impact on the price of gasoline in this country, and that by 1974 and 1975 the price of gasoline was substantially higher than the prices quoted by petitioners. This factor results in less gasoline purchased per dollar by petitioners and, therefore, less business mileage traveled than petitioners claimed. Petitioners also claim that all amounts paid to the gasoline companies were for gasoline purchases. Although we find it credible that the expenses were made primarily for gasoline purchases and that James did most of the major repair work on the cars, [9] we find that a percentage of the payments is due to minor repairs and normal maintenance expenses such as oil and tune-ups. *256 Finally, we note, as Paulette Perkins testified, that a certain amount of James' travel consisted of over-night trips. Paulette stated that this occurred sometimes once or twice a week. Petitioners clearly have failed to fulfill the substantiation requirements of section 274 for these trips. There are no records of the trips, their dates, or business purposes. Petitioners have failed to sustain their burden of proof with respect to these expenses and deductions that are attributable to these trips cannot be allowed. The factors listed above substantially reduce the amount of business mileage that can be allowed to the petitioners. In evaluating the adjustments to petitioners' claimed deductions, we find that a proper estimate of business mileage traveled by James is 45,000 miles in each of the years in issue. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect for the years in issue.↩
2. The summary sheet for petitioners' exhibit #2 states that the amounts paid in 1975 to Shell Oil Co. equalled $1,081.90, and to Tenneco Oil Co. equalled $179.82. The total gas purchases figure is stated as $3,529.80, including $540 for cash purchases. The cancelled checks show that the figures on the summary sheet are in error.↩
4. Based on cancelled check amounts, petitioners' 1975 credit purchases total is inaccurate. See footnote 2, supra↩.
3. The summary sheet for petitioners' exhibit #1, outlining the above mileage calculation contains a mathematical error. Assuming that petitioners intended the "total miles" and "total pleasure miles" figures to be correct, petitioners' calculations should result in 128, 211 total business miles. Petioners, however, reported the 117,045 miles listed on their summary sheet as a business mileage deduction on their 1974 Federal income tax return. ↩
5. In this regard, petitioners argue that respondent was arbitrary in disallowing deductions for the full amounts claimed and that respondent now bears the burden of proving that petitioners did not travel the mileage claimed. There is no evidence in the record to support petitioners' contention that respondent has been arbitrary. ↩
6. Petitioners claimed they kept daily reports. However, they did not introduce them into evidence nor testify to what was reflected on them. Rather, they rely only on cancelled checks in an attempt to substantiate their purchases. Petitioners did submit along with their brief numerous copies of credit card invoices. These were not put into evidence, however, and cannot be considered.↩
7. The credit purchase figure for 1975 should be $3,013.87. The total purchases claimed by petitioners, including the claimed cash purchases, should have been $3,553.87. See footnotes 2 and 4, supra↩.
8. Had petitioners offered evidence sufficient to substantiate these cash purchases, the mileage deduction allowed to them would have been greater.↩
9. James Perkins was a mechanic for 11 years and worked on Corvairs as a hobby. He was qualified to repair his own cars.↩